IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCUS WILLIAMS, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>) Case No. 13−cv−977 −SCW<br>HOLTON, )<br>MICHAEL SCHNICKER and )<br>V. SMITH )<br>)<br>)<br>    Defendants. )<br>) | |

# ORDER

**WILLIAMS, Magistrate Judge:**

This § 1983 case, in which *pro se* Plaintiff Marcus Williams alleged excessive force, is before the Court on Defendants' Motion for Summary Judgment (Doc. 38) for failure to exhaust administrative remedies.

On September 23, 2013, Plaintiff brought the present Complaint pursuant to Section 1983, making claims that Defendants used excessive force against him on December 16, 2011. (Doc. 1). Defendants filed the present Motion on June 26, 2014. (Doc. 38). Plaintiff filed a Response on July 31, 2014. (Doc. 41). The Court then held a hearing on this issue on January 15, 2015. For the reasons that follow, Defendants' Motion is **GRANTED.** (Doc. 38).

**Plaintiff's Grievances**

Plaintiff alleges in his Complaint that he filed a grievance with his counselor Ms. Mueller, and that Mueller failed to respond. (Doc. 1, p. 4). Plaintiff did not attach any exhibits to his Complaint. Defendants submitted exhibits showing that Plaintiff wrote a grievance dated December 17, 2011, complaining about the relevant incident. (Doc. 39-1, pp. 7-9). Plaintiff wrote a letter to

1

the ARB dated December 18, 2011, indicating that he was sending them the December 17 grievance because "the counselor will not accept it." (Doc. 39-1, p. 6). The ARB received the grievance on December 21, 2011, and rejected it on December 22, 2011 for failure to include the Grievance Officer's and Chief Administrative Officer's responses. (Doc. 39-1, p. 5).

Plaintiff's responses to Defendant Holton's interrogatories indicate that he wrote one grievance, dated December 19, 2011, which he submitted to his counselor on December 22, 2011. (Doc. 39-1. p. 34). He further alleged that his counselor, Barbara Mueller, failed to respond to this grievance. (Doc. 39-1, p. 24). Plaintiff responded in a nearly identical manner to interrogatories propounded on behalf of Schnicker and Smith. (Doc. 39-1, pp. 36-39). He also submitted a copy of the grievance he alleges Mueller did not respond to in response to Defendants' Request for Production. (Doc. 39-1, pp. 42-43). The grievance is dated December 19, 2011 and does not have any marks showing that prison officials received it. (Doc. 39-1, pp. 42).

Mueller submitted an affidavit stating that Plaintiff submitted three grievances to her between December 16, 2011 and December 30, 2011, regarding the alleged assault. (Doc. 39-1, p. 11). Mueller stated in her affidavit that she responded to all three grievances on December 30, 2011. (Doc. 39-1, p. 11). Her response is also reflected in Plaintiff's cumulative counseling summary. (Doc. 39-1, p. 15). Mueller further testified at the hearing on January 15, 2015. (Doc. 58). Mueller's testimony was consistent with her affidavit and the cumulative counseling summary. Mueller testified that she always responded to prisoners' grievances. She further testified that, in the course of her long career, she had seen the necessity of documenting her actions regarding grievances, and that by the time she was Plaintiff's counselor, it was her standard practice to do so. When asked specifically about the December 30, 2011 entry on Plaintiff's cumulative counseling summary, Mueller testified that the phrase "answer on all 3 grievances" meant that she had returned the grievances to Plaintiff with a response. The notation "copy sent to internal affairs to investigate

2

allegations" meant that Mueller had copied the grievances and then sent the copies on to internal affairs (IA). She testified that the copy sent to IA would have been separate from the answers received by Plaintiff.

In his Response Plaintiff submitted no additional evidence. Rather, he argued that the December 30, 2011 entry meant that Mueller had given his grievances to IA in lieu of responding, and that therefore, the grievance process was unavailable to him. Plaintiff repeated this argument at the hearing.

**1. Summary Judgment Standard**

Summary judgment — which is governed by Federal Rule of Procedure 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing Fed. R. Civ. P. 56(a))**.[1] The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

While generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether a general issue of triable fact exists, a different standard applies to summary judgment on the issue of exhaustion. ***Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).** When there are factual disputes regarding exhaustion, the Court holds a hearing, allows limited discovery, and resolves any factual dispute material to the issue. ***Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).** Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

---

[1] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. ***Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011)**.

3

>The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

***Id.* at 742.**

### 2. PLRA's Exhaustion Requirement

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[2] **42 U.S.C. § 1997e(a).** Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. **Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008).**

The Seventh Circuit takes a strict compliance approach to exhaustion; requiring inmates follow all grievance rules established by the correctional authority. **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).** A prisoner must therefore "file complaints and appeals in the place, and at the time, the prison's rules require." **Pozo v. McCaughtry, 268 F.3d 1022, 1025 (7th Cir. 2002).**

---

[2] It is clear that complaints about a prisoner's medical treatment are complaints about prison conditions for the purposes of the PLRA. **Witzke v. Femal, 376 F.3d 744, 751 (7th Cir. 2004) (citing Wilson v. Weiter, 501 U.S. 294, 299 n. 1 (1991) ("[I]f an individual prisoner is deprived of needed medical treatment, that is a condition of his confinement.")).**

But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. § 1997e(a).** The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. **Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002).** However, if the prisoner fails to follow the proper procedure, the grievance will not be considered exhausted. **Pavey v. Conley, 663 F.3d 899, 903 (7th Cir. 2011).** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).**

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion. **See Jones v. Bock, 549 U.S. 199, 218 (2007).**

### 3. Exhaustion Requirement under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.** The grievance procedures first require inmates to attempt to informally resolve the issue with their counselor. **20 Ill. Admin. Code § 504.810(a)**. If the counselor does not resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident. **Id**. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).**

"If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." **20 Ill. Admin. Code § 504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance directly with the ARB. **20 Ill. Adm. Code § 504.870**. Those circumstances include grievances addressing 1) placement in protective custody; 2) involuntary administration of psychotropic medication; 3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and 4) all other issues, with the exception of personal property issues, that occurred at a previous institution. *Id.*

**Conclusions of Law**

Plaintiff has alleged that he did not receive the three grievances back from Mueller. Therefore, his attempts to use the grievance process were met with no response and it was presumptively unavailable to him. The Court finds Plaintiff not credible on this point. It is undisputed that Plaintiff sent a grievance directly to the ARB prior to raising his issue with Mueller. In his letter attached to that grievance, Plaintiff alleges that he got no response to his grievances. But Plaintiff had not even submitted the issue to Mueller yet. Plaintiff's letter to the ARB that represented that Mueller would not respond to his grievances is dated December 18, 2011, but the grievance he submitted to Mueller is dated December 19, 2011. Plaintiff clearly had no grounds to represent to the ARB that his grievances were going un-answered at the time that he wrote to them because he had not submitted the issue to his counselor yet. Plaintiff's story about how many grievances he filed has also changed. In his Interrogatories, Plaintiff alleged that he only filed one relevant grievance with Mueller. But Plaintiff clearly wrote at least two—one to the ARB and one to Mueller. Mueller's notes indicate that he gave her three grievances, but Plaintiff denied that all three of those grievances were relevant to the alleged incident. In part due to the number of times Plaintiff has changed his story, the Court does not credit Plaintiff's story that he never received the grievances back from Mueller.

Additionally, the Court found Mueller's testimony about what her December 30, 2011 entry meant very credible. Mueller testified that, contrary to Plaintiff's assertions, her entry reflected the fact that she returned three grievances to Plaintiff with a response, and forwarded copies of those grievances to IA. The Court credits Mueller's testimony and finds that Plaintiff did in fact, receive a response from Mueller. Plaintiff was obligated to pursue the grievance process further with the grievance officer after receiving the grievances back from her. Plaintiff chose not to do so, perhaps in part because he had already received a response from the ARB at that time. But the PLRA

requires strict compliance with the grievance process. Plaintiff did not comply. His case will be dismissed for failure to exhaust administrative remedies.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. 38). Plaintiff's case is **DISMISSED without prejudice** for failure to exhaust administrative remedies. Plaintiff's Motion for Recruitment of Counsel is **MOOT**. (Doc. 43). The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**

**DATE:** February 3, 2015 /s/ *Stephen C. Williams*
**STEPHEN C. WILLIAMS**
United States Magistrate Judge